FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 30, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TRENA BULTENA,<br><br>               Plaintiff,<br><br>        v.<br><br>WASHINGTON STATE<br>DEPARTMENT OF AGRICULTURE,<br><br>               Defendant. | No.   1:15-CV-03076-SMJ<br><br><br>**ORDER RULING ON MOTIONS<br>FOR SUMMARY JUDGMENT** |

Before the Court are Defendant Washington State Department of Agriculture (the Department)'s Motion for Summary Judgment, ECF No. 67, and Plaintiff Trena Bultena's Motion for Summary Judgment, ECF No. 71 as amended by ECF No 117. A hearing was held on March 23, 2018, in Spokane, Washington, and the Court took the matter under advisement. The Court also heard argument on the Department's motion to strike Bultena's statement of facts, ECF No. 86, and orally denied the motion. This Order memorializes and supplements the Court's oral ruling.

Bultena worked as a fruit inspector for the Department's Fruit and Vegetable Program from 2002 to 2013. In her final two years of employment, Bultena's frequent tardiness became an issue. Although she was scheduled to begin her shift

at 8:00 a.m., she frequently arrived to work after 8:00 a.m. Bultena attributed her late arrival to her inability to hear her alarm clock in the morning due to her permanent hearing loss. Bultena requested a later start time as a reasonable accommodation. The Department did not approve this accommodation. Bultena also attempted to use FMLA leave to cover the periods of her shift for which she was late, but the Department denied FMLA leave on the grounds that Bultena did not have a qualifying condition. Bultena was moved to the Yakima Office in February 2012 while an investigation was pending. On May 17, 2013, Bultena was terminated due to her frequent, persistent tardiness.

Bultena now brings claims against the Department for disability and gender discrimination under the Washington Law Against Discrimination (WLAD), Wash. Rev. Code (RCW) § 49.60, violation of the Washington Family Leave Act (WFLA), RCW § 49.78, hostile work environment, and wrongful termination.[1] The Department moves for summary judgment on all remaining claims and Bultena filed a cross motion for partial summary judgment on the WLAD and WFLA claims. Bultena's claims for disparate treatment based on disability, gender discrimination, and hostile work environment fail because she cannot make out a prima facie case

---

[1] Plaintiff's complaint alleges several other causes of action, which Defendants address in their motion for summary judgment, however the parties indicated at the hearing that Bultena has abandoned the ADA, Rehabilitation Act, FMLA, Equal Pay Act, invasion of privacy, and negligent hiring and supervision claims. Accordingly, those claims are dismissed.

on the undisputed facts in the record and her wrongful discharge claim is statutorily precluded. However, genuine issues of material fact preclude summary judgment on the failure to accommodate and WFLA claims. Accordingly, the Department's motion for summary judgment is granted in part, and Bultena's motion for summary judgment is denied in full.

## BACKGROUND

### A.    Undisputed Facts

Plaintiff Trena Bultena was an agricultural inspector with the Department's Fruit and Vegetable Program from 2002 through 2013. ECF No. 69 at 165. Fruit and Vegetable Program inspectors inspect quality, condition, and phytosanitary criteria of fresh produce. The Fruit and Vegetable Inspection Program is an entirely self-supporting, fee-for-service program that does not accept federal funds and is not supported by state funding. *Id.* at 10–11.

Bultena's performance evaluations from 2002 through 2005 were complimentary of her job performance. *Id.* at 104–11. Bultena's 2005–2006 annual performance evaluation raised concerns about her tardiness. *Id.* at 113. Bultena provided a written rebuttal to her evaluation. *Id.* at 115. She attributed her tardiness to a back injury, which she treated with narcotic pain relievers, her children failing to wake her, and her hearing loss. *Id.* Bultena indicated that she expected her tardiness issues to resolve when her back healed. *Id.* Bultena received a

supplemental evaluation a few months later indicating she had resolved her issues relating to tardiness. *Id.*

In September 2010, Bultena received her 2009–2010 performance evaluation. *Id.* at 121. She received favorable comments on her technical skill, but tardiness was again noted as an issue. *Id.* Bultena was advised that her tardiness causes delays in scheduling and getting out to the warehouses. *Id.* Expectations for the following year included her need to communicate more professionally, remain open minded, to show up for work on time, and to discontinue the practice of using annual leave to cover for late arrivals. *Id.* Bultena signed the evaluation and expectations without providing any additional comments. *Id.*

In March 2011, Bultena inquired about late arrival as a reasonable accommodation for her on-going tardiness. *Id.* at 124. Human Resource Consultant Barbara Hoff asked for current information from a medical professional laying out Bultena's limitations and suggesting possible accommodations. *Id.* Bultena indicated that it would be difficult for her to find time to see a doctor to obtain this information given her work schedule. *Id.* at 126. Hoff emailed Bultena twice in May and again in July asking for the required documentation. *Id.* at 126–27.

On September 26, 2011, Bultena received her 2010–2011 evaluation. *Id.* at 132. Bultena's continuing frequent tardiness was noted. *Id.* In October 2011, the Department relocated Bultena to Agricultural Inspector 4. *Id.* at 135. In February

2012, Bultena was assigned to the Yakima office pending an investigation that resulted from complaints by two warehouses. *Id.* at 137.

In April 2012, the Department arranged for an evaluation at Thompson Audiology and Hearing Center, by Dr. Rodney Thompson and a vocational work evaluation at Whitmer & Associates. Dr. Thompson's report included the finding that Bultena had moderate hearing loss in both ears. *Id.* at 140. He recommended two options to help her wake up in the morning: a specialized alarm for hearing impaired individuals and/or an inexpensive vibrating alarm watch. *Id.* The vocational recommendations from Whitmer & Associates noted that "a vibrating wristwatch is likely the best option for getting Ms. Bultena out of bed on time." *Id.* at 148.

Bultena did not appear to implement the recommendations and persisted in her request that the Department allow her to arrive to work late. In July 2012, Bultena requested to use FMLA to excuse her continued tardiness. ECF No. 69 at 54. The request was denied on the basis that Bultena did not qualify for FMLA leave.

Bultena submitted to the Department two FMLA certifications indicating her eligibility for FMLA leave—one in July 2012 and one in April 2013. The 2012 certification was written by Dr. Reinmuth, who was Bultena's primary care provider from 2010 to 2012. ECF No. 74 at 233. The certification stated:

The need for estimated medical leave began retroactive to at least July 06, 2011. The need for leave is estimated to continue for at least twelve months. Medical leave is the most effective accommodation since the employer will not accommodate a flexible schedule, telecommuting, or schedule adjustments to facilitate timely arrival expectations. VRC Whitmer notes that 'other accommodations are too burdensome or costly.' The only effective option for Trena to meet her medical necessities without schedule changes, flexible schedule, or telecommuting options is to take leave as needed because she cannot meet the changes made to scheduling after she accepted the position without accommodation.

*Id.* at 234.

The April 2013 certification was written by Dr. Lefors, who had been Bultena's primary care provider from July 2012 to the date the letter was written. *Id.* at 170. The certification indicated that "medical leave is the most effective accommodation since employee will not accommodate a flexible schedule." *Id.*

Bultena's employment with the Department was terminated on May 17, 2013. *Id.* at 152. Following her employment at the Department, Bultena worked at Elevate Learning from July to December 2015. While there, Bultena reported for shifts as early as 5:00 a.m. *Id.* at 93. Bultena worked for Valley Water/Lab Test in late 2015 to early 2016. *Id.* at 159. Her shifts there began at 8:00 a.m., and she had no accommodation to permit a late start. Most of the time, Bultena was either early or on time for her shifts at Lab Test. From September 6, 2017, to November 4, 2017, Bultena worked at 11-R Sales/Evans Fruit. *Id.* at 160. For 20 of the 37 total shifts

Bultena worked at 11-R Sales, Bultena started work very early in the morning—usually around 5:00 a.m. *Id.* at 161.

Bultena currently works full time at Foothills Irrigation, and has done so since March 2016. *Id.* at 163. Her shift at Foothills Irrigation begins at 8:00 a.m., and Bultena has no reasonable accommodation to permit a later start. Most of the time, Bultena is either early or on time for her 8:00 a.m. shift. *Id.* at 91–92.

**B.     Evidentiary Objections**

At the hearing, defense counsel raised an evidentiary objection to a report included by Bultena in her statement of facts. The report (the "Intravaia Report") was produced by Intravaia Risk Management Group, LLC, an outside human resources consulting agency, regarding alleged misconduct by Ken Frazier, a manager at Washington State Department of Agriculture. The investigation found by a preponderance of the evidence that Frazier violated the Department's discrimination and harassment prevention policies. The report also noted that Charles Dragoo and Karen Cozetto appeared to collude with and protect Frazier. Bultena seeks to use the report to establish a pattern of discrimination and failure to appropriately respond to harassment at the Department. The Department contends that the report should be excluded as irrelevant, unduly prejudicial, inadmissible hearsay, and impermissible character evidence. For the reasons set out below, the Court agrees.

Rule 56 of the Federal Rules of Civil Procedure requires that a motion for summary judgment be supported or opposed by "citing to particular parts of the record" including "depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). While the evidence need not be in a presently admissible form, it must be capable of being admitted in a form that would be admissible in evidence in order to be considered by the court on summary judgment.

Relevance is the threshold evidentiary hurdle all admissible evidence must meet. Rule 401 of the Federal Rules of Evidence states that relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Rule 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The Intravaia Report is relevant because the prior actions of Frazier, Dragoo and Cozetto have some tendency to make facts at issue in this case more likely. Dragoo and Cozetto were involved in overseeing Bultena's employment. Dragoo

oversaw Bultena's work when she was assigned to the Yakima office and met with her on at least one occasion regarding her tardiness. ECF No. 74 at 88. Likewise, Frazier was one of Bultena's superiors during certain periods of her employment at the Department. *See id.* at 213. Thus, the findings in the Intravaia Report that these individuals violated certain department policies has some tendency to make Bultena's claims of harassment or discrimination more likely.

Importantly, the relevance of the Intravaia Report derives from its tendency to show propensity, which is not permissible in civil trials. The Ninth Circuit has recognized that past discriminatory conduct is admissible only Sound"in rare and narrow circumstances in discrimination cases to show an employer's state of mind with respect to the protected class." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1208 n.3 (9th Cir. 2002) (citing *Becker v. ARCO Chem. Co.*, 207 F.3d 176, 194–203 (3d Cir. 2000)). Bultena has not established that the Intravaia report falls into this narrow exception. This is especially true because the report focuses on discriminatory conduct primarily directed at Hispanic individuals and short-term employees. The report identifies only one instance that could be interpreted as sexual harassment, and further states that Frazier was an "equal opportunist" with respect to his inappropriate conduct. ECF No. 74 at 260.

Moreover, even if the Intravaia Report were admissible under 404(b), the risk of prejudice substantially outweighs the report's limited probative value. A jury

would likely have difficulty understanding why they are being asked to evaluate the context and severity of conduct directed at individuals other than Bultena, who belong to classes to which Bultena does not, perpetrated by individuals other than Bultena's direct managers. Further, it would create the problem of several trials within the trial, which would be confusing and time-consuming. Accordingly, the Intravaia Report would not be admissible at trial, and it will not be considered as part of the summary judgment record here.

## LEGAL STANDARD

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)

(internal citation omitted). When considering a motion for summary judgment, the Court does not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Sgt. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "In short, what is required to defeat summary judgment is simply evidence 'such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor.'" *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (quoting *Reza v. Pearce*, 806 F.3d 497, 505 (9th Cir. 2015)).

## DISCUSSION

### A. WLAD Disability Discrimination Claims

Bultena brings claims for disability discrimination under the WLAD for disparate treatment and failure to accommodate. Bultena cannot establish a prima facie case for her disparate treatment claim, but questions of fact preclude summary judgment in favor of either party on her failure to accommodate claim.

#### 1. Disparate Treatment

To establish a prima facie case of disability discrimination under the WLAD, Bultena must show that (1) she was disabled, (2) she was performing her job satisfactorily, and (3) she suffered an adverse employment action. *Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cty.*, 404 P.3d 464, 473 n.3 (Wash. 2017). Where, as here, the plaintiff relies on circumstantial evidence, Washington courts use the

burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Mikkelsen*, 404 P.3d at 471. Under this framework, Bultena must first make a prima facie showing of disability discrimination. The burden then shifts to the Department to present legitimate reasons for the adverse action. If the Department meets that burden, the burden shifts back to the employee to demonstrate a genuine issue of material fact regarding whether the employer's reasons were pretext. *Id.* at 471.

As the basis for her disparate treatment claim, Bultena alleges that she was transferred from the warehouse to the office due to her request for an accommodation and later terminated because of her inability to arrive to work on time. However, the Department asserts that Bultena was transferred pending an investigation based on complaints from two warehouses and terminated due to her excessive tardiness. ECF No. 69 at 137. Bultena further asserts that the fact she was terminated based on tardiness—which she alleges stemmed directly from her disability—establishes discriminatory treatment. However, other than the fact of termination itself, Bultena cannot produce evidence to show that the Department acted with discriminatory intent. She alleges that, while other employees were allowed a ten-minute grace-period, she was not given such lenience. However, the record shows that Bultena was reprimanded for only the times when she arrived more than ten minutes late. *See* ECF No. 74 at 83. Because Bultena cannot point

to any evidence to show the Department's proffered reason for her termination was pretext, she cannot establish a prima facie case for disparate treatment under the WLAD. The Department is therefore entitled to summary judgment on this claim.

### 2. Failure to accommodate

To establish a prima facie case of failure to accommodate, Bultena must establish that (1) she had a sensory, mental, or physical impairment that substantially limited a major life activity, (2) she was qualified to perform the essential functions of the job, (3) she gave the Department notice of the disability and its substantial limitations, and (4) upon notice, the Department failed to affirmatively adopt available measures that were medically necessary to accommodate the abnormality. *Davis v. Microsoft Corp.*, 70 P.3d 126, 130 (Wash. 2003).

The record establishes that Bultena had a disability that impacted a major life activity. *See* ECF No. 69 at 140 (audiology report showing moderate hearing loss). The record also shows that Bultena was qualified to perform her job. *See id.* at 113–21 (performance evaluations). Her work evaluations were complimentary and consistently gave her high marks on her inspections. *Id.* The record further establishes that Bultena gave the Department notice of her hearing loss. *See id.* at 124 (correspondence between Bultena and Barbara Hoff). The outcome of the

Department's motion for summary judgment therefore turns on whether the Department failed to adopt a medically necessary accommodation to enable Bultena to perform the functions of her position.

There is a question of fact as to whether a later start time was medically necessary to accommodate Bultena's disability. In support of her case, Bultena points to certifications from her primary care providers, Dr. Lefors and Dr. Reinmuth, which stated that Bultena was "not able to perform the functions of her job without effective accommodation to arrival times." ECF No. 74 at 232; *id.* at 171. However, a vocational work evaluation report indicated that Bultena could perform the functions of her job and could improve her ability to wake up on time through the use of a vibrating alarm clock. ECF No. 69 at 144–50. Bultena also reported for work on time for several months in 2006 after she was initially confronted about her tardiness, s*ee* ECF No. 74 at 45, and she was able to arrive on time in her subsequent positions without a late start time accommodation. *See* ECF No. 69 at 160–62 (shift records from Evans Fruit); *id.* at 163 (records from Foothills Irrigation Inc.).

There is also a question of fact as to whether the accommodation would impose an undue hardship on the Department. The Ninth Circuit has recognized that "an employer has a duty to accommodate an employee's limitations in getting to and from work." *Livingston v. Fred Meyer Stores, Inc.*, 388 Fed. App'x 738, 740

(9th Cir. 2010); *see also Humphrey v. Memorial Hospitals Ass'n.,* 239 F.3d 1128, 1135 (9th Cir. 2001); *Colwell v. Rite Aid Corp.,* 602 F.3d 495, 506 (3d Cir. 2010). However, an employer is not required to provide an accommodation that compromises an essential function of the job. *See Dedman v. Wash. Personnel App. Bd.*, 989 P.2d 1214, 1219 (Wash. Ct. App. 1999). The Department argues that Bultena's 8:00 a.m. arrival was an essential function of the job. There is some evidence in the record to support this position. Namely, the deposition testimony of Department employees that tardiness impacted productivity and negatively affected the Department's relations with the warehouses for which it worked. *See* ECF No. 69 at 31–32 (deposition of Robert Newell); *id.* at 41 (deposition of Jim Nelson). However, there is also evidence that shifts with start times other than 8:00 a.m. were available and that employees were permitted to arrive after the scheduled work time. ECF No. 74 at 213 ("It is the practice in the district where Trena works to not document it or require a leave slip if an employee is less than 10 minutes late. Any more than that, they are required to submit a leave request.").

Because genuine issues of material fact remain regarding the necessity and feasibility of Bultena's requested accommodations, neither party is entitled to summary judgment on this claim.

## B.     Washington Family Leave Act

The Washington Family Leave Act is Washington's version of the Federal Medical Leave Act. The WFLA mirrors the federal framework.[2] WFLA leave must be taken concurrently with leave under the FMLA. Like the FMLA, the WFLA provides 12 weeks of unpaid leave for certain medical reasons, birth or placement of a child, and care of family members with a serious health condition. Leave can be used intermittently or to reduce the employee's schedule.

To qualify for WFLA leave, the employee must suffer from a serious health condition. A serious health condition includes "[a]ny period of incapacity or treatment for such incapacity due to a chronic serious health condition." RCW 49.78.020(16)(a)(ii)(C). Section 49.78.010(14) defines a period of incapacity as "an inability to work, attend school, or perform other regular daily activities because of the serious health condition, treatment of that condition or recovery from it, or subsequent treatment in connection with such inpatient care."

The parties here dispute whether Bultena suffered from a "serious health condition" as defined under the WFLA. The FMLA[3] creates a scheme for the

---

[2] The parties agree that the Department, a state agency, is immune from suit for damages under the FMLA. However the Department does not assert immunity from the WLFA and argues the claim on the merits. Because the Department does not raise immunity, the Court will assess the WFLA claim on the merits.

[3] RCW § 49.78.410 provides that the WFLA must be construed "to the extent possible, in a manner consistent with similar provisions" of the FMLA.

medical determination of whether an employee has a serious health condition. 29 C.F.R. § 825.307. The employee may submit a FMLA certification to the employer. If the certification is sufficient, the employer may then require the employee to get a second opinion from a health care provider of the employer's choice. *Id.* If the two opinions differ, the employer may require the employee to seek a third opinion from a physician chosen by both the employer and employee. *Id.* This final opinion is controlling. Costs associated with obtaining the second and third opinions are at the employer's expense. *Id.*

Unfortunately, the parties here did not engage in the process outlined above. After Bultena requested an accommodation and use of her protected leave in March 2011, the Department's human resources consultant, Barbara Hoff, contacted Bultena on several occasions requesting medical certification of her eligibility for protected leave. ECF No. 69 at 129. Bultena did not provide this documentation. In July 2011, Hoff sent Bultena a letter denying her accommodation request due to a lack of medical documentation. *Id.* In April 2012, the Department arranged for Bultena to receive an audiological evaluation and a vocational work evaluation report. Neither indicated that Bultena required an accommodation or protected leave regarding her tardiness. In July 2012, Bultena's primary care provider at the time, Dr. Reinmuth, provided an FMLA certification indicating Bultena qualified for protected leave five times per week for up to one hour each morning. In April 2013,

Bultena submitted a substantially identical FMLA certification from her new primary care provider, Dr. Lefors.

On the facts outlined above, the Court cannot say that either party is entitled to judgment as a matter of law. A question of fact remains as to whether Bultena had a serious health condition requiring WFLA leave. Neither the audiological evaluation nor the vocational work evaluation report specifically address WFLA or FMLA eligibility. However, both specifically address the underlying condition giving rise to the alleged qualifying condition—Bultena's hearing loss—and neither recommend a late start time as a necessary accommodation. Further, the FMLA certifications provided by Drs. Reinmuth and Lefors were vague and appeared to rely primarily on Bultena's self-reported symptoms as the basis for the certification. Finally, the fact that Bultena routinely arrived to work within one half hour of her scheduled start time raises a question as to whether she was truly "incapacitated" within the meaning of the WFLA. For these reasons, the question of whether Bultena was entitled to protected leave is properly reserved for trial.

## C.    Sex Discrimination under WLAD

Bultena's complaint alleges that the Department treated Bultena and other female employees differently than similarly situated male employees in the terms and conditions of employment. She further alleges that managers "repeatedly engaged in conduct and used demeaning degrading phrases related to women and

gender that were not used in reference to male employees" and that the conduct was widespread and commonly known and therefore imputable to the Department as a whole. ECF No. 1 at 11.

The undisputed facts do not support a prima facie case for sex discrimination. Bultena appears to assert a theory of direct evidence of sex discrimination. However, she has been unable to point to any evidence in the record that bears this out. She asserts that she was passed over for opportunities, but the record does not show that she ever applied for a promotion. She asserts that she was singled out for discipline for tardiness, but the record shows that male employees were subject to the same discipline. ECF No. 74 at 187. Further, she alleges that she was subject to demeaning verbal comments, but she can identify only a few, isolated instances over the span of several years. ECF No. 89 at 85–87. Accordingly, other than her own conclusory allegations, Bultena is unable to show any evidence to support a claim for sex discrimination.

Even if the Court were to analyze Bultena's claim under the *McDonnell Douglas* burden-shifting framework for circumstantial evidence, it would still fail. It is undisputed that Bultena is a member of a protected class (women), and that she suffered an adverse employment action (termination). The burden would then shift to the Department to offer a legitimate nondiscriminatory reason for Bultena's termination. The Department asserts that it terminated Bultena because of her

frequent tardiness. The burden then shifts back to Bultena to show that the Department's reasoning was pretextual. For the same reasons articulated above, Bultena cannot meet this burden. There is no evidence in the record to establish a nexus between Bultena's termination and her sex. Accordingly, the Department is entitled to summary judgment on this claim, as well.

**D.    Hostile Work Environment**

Under both state and federal law, to establish a prima facie case for a hostile work environment claim, the plaintiff must show that (1) he or she was subjected to unwelcome hostile or abusive conduct, (2) the conduct was based on the plaintiff's protected status, (3) the conduct was sufficiently severe to affect the terms and conditions of employment, and (4) the hostile or abusive conduct is imputable to the employer. *See Glasgow v. Georgia-Pacific Corp.*, 693 P.2d 708, 712 (Wash. 1985).

Bultena's response brief states that WSDOA created a hostile work environment by "refusing to accept Trena's requests for accommodations as legitimate and continuing to disregard her doctor's notes and refusing the schedule change even when it was readily attributable to the department." ECF No. 88 at 16. This statement constitutes the entirety of Plaintiff's briefing on the matter. As presented to the Court, this is insufficient to establish a case for a hostile work environment.

When asked at her deposition, Bultena identified the following allegedly offensive conduct: (1) Ken Crow telling her to "act like a grownup," and once chasing her down the hall while yelling at her; (2) Denny Davis on one occasion saying she was strong "for a girl"; and (3) Rocky Weible asking men for help with supervisory duties. ECF No. 69 at 85–87. Even working from these facts, Bultena cannot establish a hostile work environment claim. Other than the comment that she was strong for a girl, Bultena has produced no evidence that the above-cited behavior was based on her protected status—either her sex or her disability. Further, there is no evidence that any alleged harassment was "severe and pervasive." "To constitute a hostile [work] environment, the frequency and severity of the offensive conduct must be such as to affect the terms and conditions of employment." *Adams v. Able Bldg. Supply, Inc.*, 57 P.3d 280, 283 (Wash. Ct. App. 2002). Bultena cannot point to any evidence that would show the above-cited conduct was so severe as to impact the terms and conditions of her employment.

**E.    Wrongful Discharge**

Bultena also asserts a claim for wrongful discharge in violation of public policy. This claim is entirely duplicative of her disability discrimination claim under the WLAD. Washington courts have not yet determined whether the WLAD precludes common law claims for wrongful termination. However, an order written by Judge Thomas O. Rice in this district held that the statutory remedy bars the

common law action. *Lee v. Rite Aid Corp.*, 917 F. Supp. 2d 1168, 1178 (E.D. Wash. 2013). This opinion is very thorough and well-reasoned and the Court sees no reason to deviate from Judge Rice's holding on the issue. Accordingly, because Bultena had a statutory remedy for disability discrimination under the WLAD—which she utilized—her claim under the common-law tort of wrongful discharge is statutorily precluded.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion for Summary Judgment, **ECF No. 67**, is **GRANTED** in part, and **DENIED** in part.

    *A.* Defendant's motion is GRANTED with respect to Plaintiff's ADA, Rehabilitation Act, FMLA, Equal Pay Act, invasion of privacy, and negligent hiring and supervision claims.

    *B.* Defendant's motion is GRANTED with respect to the WLAD disparate treatment and gender discrimination claims, the hostile work environment claim, and the wrongful termination claim.

    *C.* Defendant's motion is DENIED with respect to the WLAD failure to accommodate claim and the WFLA claim.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 71** as amended by **ECF No. 117**, is **DENIED**.

3. Defendant's Motion to Strike 72 Statement of Facts, **ECF No. 86**, is

**DENIED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and

provide copies to all counsel.

**DATED** this 30th day of March 2018.

_____
SALVADOR MENDOZA, JR.
United States District Judge